## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DEBORAH HOLADAY,           )
                Plaintiff      )
                            )      Case No.
   v.                      )
                            )      Designation of Trial: Topeka, KS
TRI-RIVERS PROPERTY      )
MANAGEMENT, LLC;        )
TEAM3 PROPERTIES, LLC    )
                Defendants   )

### COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW Plaintiff, by and through counsel Kip Elliot, Disability Rights Center of Kansas, brings this Complaint for Damages and Jury Demand against Defendants, states and alleges the following:

### I.  INTRODUCTION

1.     This is an action under the Fair Housing Act ("FHA"), 42 U.S.C. §§  3601, *et seq*., as amended; and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794  ("§ 504).  Further, Plaintiff requests that the Court assume and exercise its jurisdiction over the Plaintiff's state claims to ensure judicial economy convenience and fairness to the parties to this action.

2.     In 1973, Congress passed § 504 of the Rehabilitation Act, the first statute providing federal civil rights protections for people with disabilities.

3.     Section 504 prohibits discrimination based on handicap in all programs receiving federal financial assistance, including housing complexes.  *See generally* 42 U.S.C. § 794(a); *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014).

4.     In response to a history of and continuing national discrimination against

individuals with disabilities, Congress enacted amendments to the FHA in 1988.  The  purpose

of the FHA Amendments was to prohibit discrimination in the national housing  market for

individuals with disabilities.[1]

5.        "The Fair Housing Amendments Act . . . is a clear pronouncement of a

national commitment to end the unnecessary exclusion of persons with handicaps from the

American mainstream.  It repudiates the use of stereotypes and ignorance, and  mandates that

persons with handicaps be considered as individuals.  Generalized  perceptions about

disabilities and unfounded speculation about threats to safety are  specifically rejected as

grounds to justify exclusion."  H.R. Rep. No. 100-711, at 18  (1988), reprinted in 1988

U.S.C.C.A.N 23173, 2179.

6.        Expanding on the previously enacted FHA, which prohibited discrimination  in

housing based on race, color, religion, and national origin, the FHA, as amended,  responded to

a recognized prejudice against those with disabilities and illnesses.[2]

7.        Plaintiff Deborah Holaday is the type of  individual Congress sought to protect

under § 504 and the FHA amendments.

8.        Defendant Team3 Properties, LLC (Team3) owns and/or manages the

property Plaintiff Holaday leased at 209 S. 9th St., Apt. #1 in Salina, Kansas.  The property is

financially subsidized by the U.S. Department of  Housing and Urban Development ("HUD")

through HUD's Project Based Section 8  Subsidy Program.  Through this program, tenants pay

---

[1] The FHA uses the term "handicap," *see, e.g.*, 42 U.S.C. § 3602(h), which has the same
meaning as disability.  Plaintiff uses the term disabled interchangeably with handicapped.

[2] The Fair Housing Act as amended, is sometimes referred to as FHAA.  For ease of reference,
Plaintiffs refer to it as "FHA."

a significantly reduced rent based on their income.  At all times giving rise to this action, Ms. Holaday lived at 209 S. 9th St., Apt. #1 in Salina, Kansas and received  subsidized housing based on her low income.

## II.  PARTIES

9.      Plaintiff Deborah Holaday is an adult who at all times giving rise to this action lived at 209 S. 9th St., Apt. #1, Salina, Kansas.

10.     Defendant Team3 Properties, LLC owns and/or manages the apartment property located at 209 S. 9th St. in Salina, Kansas.  Team3 Properties, LLC is a partnership registered in Kansas and can be served through its registered agent, Travis Arb, 2202 Country Hills Rd., Salina, Kansas 67401.

11.     Defendant Tri-Rivers Property Management, LLC manages the property located at 209 S. 9th St. in Salina, Kansas.  Tri-Rivers Property Management, LLC is a partnership registered in Kansas and can be served through its registered agent, Rachel L. Dix, 701 Bishop St., Salina, Kansas 67401.

## III.  JURISDICTION AND VENUE

12.      Subject matter jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331.

13.     This action is  authorized and instituted pursuant to the FHA, 42 U.S.C. §§ 3601, *et seq.*, as amended,  and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

14.     Plaintiff Holaday has timely commenced this proceeding pursuant to 42 U.S.C. § 3613(a).  The administrative proceeding with the Salina Human Relations Commission was closed on January 14, 2022.  The United States Department of Housing and Urban Development was closed on January 24, 2022 to allow Ms. Holaday the opportunity to file a federal complaint.

15.     This Court has jurisdiction over Plaintiff Holaday's state claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391.  All of the events alleged herein occurred within the jurisdiction of the United States District Court of Kansas. Defendants' businesses are in this district and Plaintiff was a resident of the State of Kansas at the time of the events giving rise to this litigation.

### III.  FACTS COMMON TO ALL COUNTS

**General Facts**

17.     Ms. Deborah Holaday is an adult currently living in Yuma, Arizona.

18.     At the time of the alleged incidents, Ms. Holaday was a resident of Salina, Kansas.

19.     Ms. Holaday is a person with a "handicap" as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(h); a person with a "disability" as that term is used in § 504; and a person with a "handicap" as defined in regulation implementing § 504, 24 C.F.R. § 8.3.

20.     Ms. Holaday suffers from bipolar disorder, depression, anxiety, and pulmonary embolisms which substantially limit  major life activities such as her ability to care for herself, concentrate, interact with others, and cope with stress.  At the time of the alleged incidents, Ms. Holaday relied on her emotional support cats, Lilly and Mystic, to manage her disabilities per the recommendation of her medical provider.

21.     Ms. Holaday lived at 209 S. 9th St., Apt. #1 in Salina from April 12, 2019 to June 30, 2020.

22.     Beginning August 1, 2019, Ms. Holaday leased this apartment through the Section 8 Tenant-Based Assistance Housing Choice Voucher Program.

23.     At the time of the alleged incidents, the apartment was owned by Team3 LLC and managed by Tri-Rivers Property Management LLC (Tri-Rivers).

24.     Rachel Dix is the owner of Tri-Rivers.

25.     When Ms. Holaday applied to rent the apartment, Tri-Rivers was aware the Ms. Holaday was a person with disabilities based on her Social Security income.

26.     Ms. Holaday primarily interacted with Ms. Dix throughout the duration of her residency at the Team3 property.

27.     During her residency, Ms. Holaday made numerous complaints to Ms. Dix regarding the upkeep of the residence and its adverse effects on her health.

28.     The unacceptable living conditions in Ms. Holaday's apartment exacerbated her pulmonary embolism, caused severe rashes, and other adverse physical health reactions.  The continuous issues with Ms. Dix throughout the tenancy resulted in panic attacks, difficulty sleeping, depression, and isolation among other mental and emotional distress.

**Pest Infestation**

29.     Ms. Holaday requested assistance multiple times from Ms. Dix for dust mites, roaches, and bats living in her apartment.

30.     The carpets in the apartment were filthy and Ms. Holaday began having unexplained health issues. Ms. Holaday informed Ms. Dix by email several times that the carpet was causing health issues and she wanted to remove it.

31.     Ms. Holaday had to seek medical care on three separate occasions in June 2019 for a severe allergic reaction likely caused by dust mite feces within the apartment.

32.     After no response from Ms. Dix, Ms. Holaday removed the carpets and cleaned the floors. When Ms. Dix visited the apartment, she commented that the floors looked very nice.

33.     Ms. Holaday requested maintenance help for all pest issues on at least six different occasions beginning in June 2019.

34.     The kitchen was infested with roaches living in the oven, refrigerator, ice maker, and cabinets, making it unfit for use.

35.     The heating ducts contained dead roaches and filth.

36.     Because Ms. Holaday applied for Section 8 housing assistance, HUD came to the apartment on July 2, 2019 to do an inspection.

37.     On July 2, 2019, Tri-Rivers (Ms. Dix) handed Ms. Holaday a 14/30 notice to vacate because of her two cats.  Ms. Holaday immediately gave Tri-Rivers a letter from her medical provider for an emotional support animal.

38.     On July 5, 2019, Ms. Dix refused to send maintenance to Ms. Holaday's residence until she removed her cats permanently because of the maintenance employee's alleged cat allergy. The maintenance employee had been in Ms. Holaday's apartment multiple times before this and the first "allergy complaint" was not until July 5.

39.     On July 9, 2019, Ms. Holaday requested a reasonable accommodation for an emotional support animal with the letter from her medical provider.

40.     On September 29, 2019, Ms. Dix informed Ms. Holaday that they were still unable to find contractors to eradicate the pests.

41.     Ms. Holaday continued to suffer from medical problems caused by the harmful living conditions in her apartment. Ms. Holaday's healthcare provider informed her that the allergic reactions she was having would not clear up until the unhealthy living conditions were rectified. Dr. Grant stated, "Until we get rid of the source of the itching, she is not going to get better despite what medication I gave her for the itching."

42.      Ms. Holaday did not fully recover from these medical problems until after she vacated the apartment.

43.      Ms. Holaday incurred medical expenses due to the unhealthy living conditions.

44.      On October 15, 2019, four months after Ms. Holaday's initial requests, Ms. Holaday was informed that pest control specialists were hired to assist with the pest infestation.

**Defective Air Conditioner and Heater**

45.      Ms. Holaday additionally requested that the climate control problems be resolved on multiple occasions beginning June 3, 2019.

46.      Ms. Holaday's air conditioning unit was filthy and did not work. Ms. Holaday requested a new one, which Ms. Dix denied because she was not "obligated" to provide a new one. Because the air conditioner was falling apart, filthy and did not work, Ms. Holaday removed it from the window and placed it on the front porch. She notified Ms. Dix that it had been removed.

47.       Ms. Holaday found out that her neighbor's air conditioner was replaced and emailed Ms. Dix on September 19, 2019 questioning why Tri-Rivers refused to replace her air conditioner.  Ms. Holaday was without air conditioning the entire time she was living in the apartment.

48.      On July 26, 2019 when Ms. Holaday needed air conditioning, the heater in the apartment came on. Ms. Holaday was unable to turn off the heat because the thermostat was in a lock box. Ms. Holaday called Ms. Dix about the heater issue. Ms. Dix told Ms. Holaday that it was her day off and was not her problem. Ms. Dix hung up on Ms. Holaday without resolving the problem.

49.     On November 21, 2019, Ms. Holaday reported that her apartment was unable to remain heated during the winter and that there had been no consistent heating since October 2019.

50.     The residence's lack of working air conditioner and heater negatively affected Ms. Holaday's health, specifically her pulmonary embolism.

51.     Ms. Holaday requested to utilize a free program that weatherized homes to help remedy the climate issues.

52.     Ms. Holaday sent Ms. Dix the relevant paperwork to take advantage of the weatherization program, yet never heard a response.

**Other Apartment Issues and City Code Violations**

53.     Ms. Holaday requested assistance with the residence's leaking ceiling; water damage; broken shelves in the kitchen cabinets; noisy refrigerator; electrical issues; and the wet bathroom carpet that smelled like urine.

54.     On August 7, 2019, the City of Salina Community and Development Services inspected Ms. Holaday's apartment, finding numerous code violations, including:  cracks and holes in glazing; inoperable windows; inadequate door locks; inadequate screens in required ventilation areas (kitchen and other "habitable rooms"); and significantly found that there were electrical hazards including improper wiring or installation.

55.     Many of the apartment habitability issues remained unaddressed until Ms. Holaday moved out of the apartment in June 2020.

**Eviction Cases**

56.     On July 2, 2019, Ms. Dix, on behalf of Tri-Rivers, delivered a 14/30 notice to Ms. Holaday for a lease violation, specifically the presence of Ms. Holaday's two cats.

57.     On July 9, 2019, Ms. Holaday contested the lease violation in a letter to Tri-Rivers, including a doctor's note verifying her need for an emotional support animal.

58.     On July 31, 2019, Ms. Holaday requested a refund after submitting a timely rental payment in excess of $73, which Tri-Rivers ignored.

59.     Team3 filed a Petition for eviction and a Motion for Immediate Possession, Saline County case no. 2019-LM-1359, on August 2, 2019.

60.     On August 5, 2019, Ms. Holaday filed an Answer and counterclaims in case 19-LM-1359, alleging retaliation and denying allegations.

61.     On August 8, 2019, when Ms. Holaday appeared for the hearing in case no. 2019-LM-1359, she learned that Team3 had dismissed the case on August 6, 2019.

62.     On August 7, 2019 the City of Salina building code inspector came to Ms. Holaday's residence after she complained about issues with the apartment.

63.     On August 8, 2019, after dismissing case no. 2019-LM-1359, Tri-Rivers posted a Notice to Quit for Nonpayment of Rent on Ms. Holaday's door.

64.     After numerous inquiries regarding the rent amount owed for August in light of the eviction case, Ms. Holaday paid her rent in the office drop box on August 8, 2019 with a money order dated August 2, 2019.

65.     Again on August 10 and 12, 2019, Ms. Holaday sought clarification on the rent, specifically requesting a refund for overpayment of the rental amount.

66.     On August 15, 2019, Team3 filed a Motion for Immediate Possession in the District Court of Salina County, KS, case no. 19-LM-1403, requesting one and a half times rent for Ms. Holaday's "willful bad faith holdover."

67.     On August 22, 2019, Ms. Holaday filed an Answer and counterclaim in case 19-LM-1403, alleging retaliation and denying allegations that she had not paid rent, specifying her August 2, 2019 overpayment.

68.     On August 23, 2019, the court ordered Ms. Holaday to pay an additional $7.00 for rent.

69.     On December 13, 2019, Ms. Holaday filed *pro se* a "Notice of Dismissal K.S.A. 60-241(a)" for both cases.  This is what Plaintiff Team 3 relied on when asking the District Court to dismiss both cases on July 12, 2021.

70.     K.S.A. 60-241(a) only applies to a plaintiff or the court.  It does not apply to a defendant wanting to dismiss a case.  Ms. Holaday never dismissed the counterclaims in either case.

71.     Both cases filed in Saline County continued to be adjudicated until July 12, 2021 when Team 3 moved to dismiss both cases claiming Ms. Holaday had dismissed her counterclaims in both cases on December 13, 2019.

**Crystal Crawford**

72.     On September 10, 2019, Tri-Rivers served Ms. Holaday another 14/30-day notice, claiming she was allowing an unauthorized individual to reside at her apartment.

73.     On that same day, Ms. Holaday left a voicemail for Ms. Dix denying this allegation and inviting them to physically come to her apartment to confirm there was no one else living with her.

74.     Ms. Dix refused to check Ms. Holaday's apartment.

75.     On September 11, 2019, Ms. Holaday received a notice from Suzanne Smith of the Salina Housing Authority, alleging that a former tenant named Crystal Crawford was, without being named on the lease, living with Ms. Holaday at the apartment.

76.     This notice requested documentation, including proof of Ms. Crawford's current residence by September 23, 2019, stating that Ms. Holaday's Section 8 assistance would be terminated if this documentation was not provided.

77.     On September 20, 2019, representatives from the Salina Housing Authority inspected the apartment and verified there were no unauthorized tenants.

**False Allegations to Potential Landlord**

78.     On April 21, 2020, Ms. Holaday applied to rent a house, in preparation to move out of the apartment per a mutual agreement.

79.     On May 6, 2020, Lacey Smith, the owner of Generation Property Management, sent Ms. Holaday a Rental Verification form for Ms. Dix to fill out.

80.     On May 15, 2020, Ms. Dix sent the completed form to Ms. Smith. The form had false information regarding Ms. Holaday's residency at the Tri-Rivers property.

81.      On May 21, 2020, Ms. Holaday informed Ms. Smith about the housing authority paperwork that needed to be completed for her Section 8 voucher. Ms. Smith replied that the house had already been rented.

82.     Ms. Holaday asked Ms. Smith for a copy of the Rental Verification form and received it on June 8, 2020.

83.     Ms. Holaday believes that the false claims made by Ms. Dix on the Rental Verification form prevented her from renting the house from Ms. Smith.

84.     Ms. Holaday was unable to find new housing in the Salina area and was forced to move to her parents' home in California in August 2020. Ms. Holaday moved to Arizona in November 2020.

85.     While attempting to find housing in Salina, Ms. Holaday had hotel expenses. When she was unable to find housing she incurred more expenses moving to her parents' home in California.

**Salina Human Relations Commission and Ongoing Saline County Cases**

86.     On July 11, 2019, Ms. Holaday filed a complaint with the Salina Human Relations Commission against Rachel Dix, Tri-Rivers Property Management and Team3 Properties LLC alleging failure to make a reasonable accommodation, failure to respond to maintenance requests, failure to allow a reasonable accommodation for an emotional support animal, and poor living conditions causing medical issues.

87.     On August 5 and 16, 2019, Ms. Holaday filed an amended complaint with the Salina Human Relations Commission, docket no. H-1-19/20, adding an additional claim for retaliation against Tri-Rivers and Team3.

88.     Complaints filed with the Salina Human Relations Commission are automatically dual-filed with the United States Department of Housing and Urban Development (HUD).

89.     On June 2, 2020, the Salina Human Relations Commission found probable cause to support Ms. Holaday's allegation of housing discrimination based on disability, harassment, and retaliation.

90.     Ms. Holaday moved out of the apartment on June 30, 2020.  However, the retaliation continued when Ms. Holaday requested her security deposit.  Ms. Dix claimed that Ms. Holaday owed over $1900.00 in damages.  Ms. Holaday responded to Ms. Dix regarding the alleged damages and has not received her security deposit.

91.     The cases filed with the Saline County District Court continued until July 12, 2021.  Ms. Holaday was represented by an attorney with Kansas Legal Services.

92.     The administrative proceeding with the Salina Human Relations Commission

was closed on January 14, 2022 and by the United States Department of Housing and Urban

Development on January 24, 2022 to allow Ms. Holaday the opportunity to file a federal

complaint.

## IV.  STATEMENT OF CLAIMS FOR RELIEF

**Count I:  Discrimination pursuant to the Federal Fair Housing Act, as amended, 42 U.S.C. §§  3601, *et seq*.**

93.      Ms. Holaday incorporates by reference all facts and allegations contained in the

foregoing paragraphs as though fully set forth in this claim for relief.

94.     Ms. Holaday is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and

suffered injuries as a result of Defendants' discriminatory actions and conduct.

95.     Ms. Holaday's disabilities as set forth above are impairments that substantially

limit one or more major life activities.

96.     Ms. Holaday is "handicapped" as defined in 42 U.S.C. § 3602(h), and this

statutory term as used in this Complaint has the same meaning as "disabled."

97.     Ms. Holaday explained to Defendants that her cats were emotional support

animals, thus requesting a reasonable accommodation from Defendants in response to

Defendants' pet policy when Ms. Holaday provided letters from health professionals indicating

the need for emotional support animals in order to stay in the apartment.

98.     This reasonable accommodation was necessary to afford Ms. Holaday an equal

opportunity to use and enjoy her dwelling.

99.     This reasonable accommodation would not have imposed and did not impose an

undue financial or administrative burden on Defendants and did not require a fundamental

alteration in the nature of Defendants' businesses.

100.    Defendants, directly or through their agents, discriminated against Ms. Holaday on the basis of disability through their conduct and acts, *inter alia*, as follows:

  a.  By failing to accept medical documentation of Ms. Holaday's disabilities and disability-related need for emotional support animals;

  b.  By demanding the removal of Ms. Holaday's emotional support animals;

  c.  By issuing a 14/30 notice to vacate on July 2, 2019 if Ms. Holaday did not remove her emotional support animals;

  d.  By filing a Petition for eviction on August 2, 2019 **after** Ms. Holaday had provided medical documentation for emotional support animals; and

  e.  By refusing to provide a habitable living environment and make necessary repairs to assure a habitable living environment, exasperating Ms. Holaday's disabilities.

101.    Defendants' unlawful conduct and acts deprived Ms. Holaday of the equal opportunity to use and enjoy her dwelling.

102.    As a result of Defendants' discriminatory conduct, Ms. Holaday has suffered significant injuries, damages, and losses.

103.    Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Holaday's rights.

104.    Ms. Holaday is entitled to actual and punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

105.    Ms. Holaday is also entitled to any further relief based on the foregoing claim that is necessary and proper.

**Count II:  Retaliation and Interference pursuant to the Federal Fair Housing Act, as amended, 42 U.S.C. §  3617**

106.    Ms. Holaday incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

107.    Ms. Holaday engaged in conduct and speech in opposition to Defendants' discriminatory housing practices by exercising her rights afforded by federal fair housing laws.

108.    Ms. Holaday requested reasonable accommodations because she reasonably believed that Defendants' refusal to accommodate her disabilities and disability-related needs were in violation of the FHA.

109.    Defendants, directly or through their agents, retaliated against Ms. Holaday because she exercised rights afforded to her under federal fair housing laws.

110.    Ms. Holaday filed a housing complaint with the Salina Human Relations Commission on July 11, 2019 (dual filed with HUD) charging Defendants with numerous violations under federal fair housing laws.

111.    Defendants subjected Ms. Holaday to adverse housing actions when they refused her requests for reasonable accommodations, demanded the  removal of her emotional support animals, issued her 14/30 day notice to vacate, and filed a Petition for eviction after Ms. Holaday provided medical documentation for her need for emotional support animals.

112.    Defendants have offered no legitimate reasons for their adverse housing actions, refusing to change or waive their pet policy despite its unlawfulness.

113.    Defendant Team3 dismissed the eviction action on August 6, 2019, four days after filing it after Ms. Holaday filed an Answer and Counterclaim on August 5, 2019.

114.    On August 7, 2019, after Ms. Holaday lodged complaints about the uninhabitable living conditions in her apartment, the City of Salina Community and

Development Services inspected Ms. Holaday's apartment, finding numerous code violations, including: cracks and holes in glazing; inoperable windows; inadequate door locks; inadequate screens in required ventilation areas (kitchen and other "habitable rooms"); and significantly found that there were electrical hazards including improper wiring or installation.

115.    On August 8, 2019, Defendant Tri-Rivers served Ms. Holaday a notice for nonpayment of rent. This was after Ms. Holaday had contacted Defendants regarding the rental payment due based on the previously dismissed case.

116.    Ms. Holaday paid her rent on August 8, 2019 with a money order dated August 2, 2019.

117.    Defendant Team3 then filed another Petition for eviction on August 15, 2019 for nonpayment of rent.

118.    On September 10, 2019, Defendant Tri-Rivers served Ms. Holaday with another notice of intent to terminate her lease (14/30) based on a false allegation that Crystal Crawford was living with her and was not on the lease.

119.    Section 3617 of the Fair Housing Act (FHA) prohibits intimidation, threats and interference with any person in the exercise or enjoyment of any right granted or protected by the FHA.

120.    Ms. Holaday attempted to exercise her rights protected by the FHA regarding reasonable accommodations for her emotional support animals and asking to be provided a habitable living environment and make necessary repairs to assure a habitable living environment.

121.    Defendants' conduct and actions were motivated, at least in part, by intentional discrimination and constituted intimidation, threats and interference on account of Ms. Holaday exercising her rights protected under the FHA.

122.    As a result of Defendants' discriminatory conduct, Ms. Holaday has suffered significant injuries, damages, and losses.

123.    Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Holaday's rights.

124.    Ms. Holaday is entitled to actual and punitive damages pursuant to 42 U.S.C. § 3613(c)(1).

125.    Ms. Holaday is also entitled to any further relief based on the foregoing claim that is  necessary and proper.

**Count III:  Violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**

126.    Ms. Holaday incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

127.    Ms. Holaday has a "disability" as the term  is used in § 504 and a "handicap" as defined in regulations implementing § 504, 24 C.F.R. § 8. 3.

128.    Defendant Team3 received federal financial assistance through subsidies provided by the HUD.  Ms. Holaday received a housing voucher through HUD to lease her apartment.

129.    Defendants failed to make the subsidized apartments usable to individuals with disabilities, like Ms. Holaday, who benefit from and rely on emotional support animals to manage their disabilities.

130.    In their conduct toward Ms. Holaday, as set forth above, Defendants recklessly and intentionally discriminated against Ms. Holaday on the basis of disability in violation of

§ 504.

131.    Ms. Holaday engaged in conduct and speech in opposition of Defendants' discriminatory housing practices by exercising her rights afforded by federal civil rights laws.

132.    Defendants, directly or through their agents, retaliated against Ms. Holaday because she exercised rights afforded to her under federal civil rights laws.

133.    Defendants subjected Ms. Holaday to adverse housing actions when they refused her requests for reasonable accommodations, demanded the removal of her emotional support animals, issued her 14/30 day notice to vacate, and filed a Petition for eviction after Ms. Holaday provided medical documentation for her need for emotional support animals.

134.    Defendants have offered no legitimate reasons for their adverse housing actions, refusing to change or waive their pet policy despite its unlawfulness.

135.    Defendants' conduct was engaged in with malice or with reckless indifference to the federally protected rights of Ms. Holaday within the meaning of § 504 of the Rehabilitation Act.

136.    As a result of Defendants' actions, Ms. Holaday has suffered significant injuries and losses.

### Count IV:  Breach of Contract

137.    Ms. Holaday incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

138.     A contract existed between Ms. Holaday and Defendants in that there was a signed lease whereby Ms. Holaday agreed to pay rent in consideration for Defendants' furnishing of housing.

139.     Ms. Holaday paid rent but Defendants failed to provide housing in

conformance with the lease's terms, including the implied warranty of habitability in Kansas landlord-tenant leases; the requirements of a landlord accepting HUD Section 8 housing payments; and the City of Salina housing ordinances and codes.

140.    The lease and implied warranty of habitability required Defendants to exterminate pests; maintain heating and air conditioning units as well as other appliances in proper working condition; stop water leakage and repair water damage; correct electrical hazards and maintain proper ventilation.

141.    Defendants breached the lease by failing to do so, thereby damaging Ms. Holaday, who, as a result of Defendants' breach, was subjected to uninhabitable conditions.

142.    Ms. Holaday asks for all rent she paid to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Holaday respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a.  A declaration that Defendants have violated the FHA and § 504 of the Rehabilitation Act.

b.  All appropriate equitable relief including changes to Defendants' policies concerning persons with disabilities and other declaratory and injunctive remedies, as appropriate;

c.  Actual economic damages as established at trial;

d.  Compensatory damages, including, but not limited to, those for past and future pecuniary and non-pecuniary losses, emotional distress, suffering,

loss of reputation, humiliation, inconvenience, mental anguish, loss of

enjoyment of life, and other nonpecuniary losses;

e.  Punitive and/or liquidated damages for all claims allowed by law in an

amount to be determined at trial;

f.  Pre-judgment and post-judgment interest at the highest lawful rate;

g.  Attorneys' fees and costs; and

Such further relief as justice requires.


BY:     /s/R. Kip Elliot
        R. Kip Elliot #17663
        Disability Rights Center of Kansas
        214 S.W. 6TH Ave., Suite 100
        Topeka, KS 66603
        (785)273-9661
        (785)273-9441 facsimile
        kip@drckansas.org
        ATTORNEY FOR PLAINTIFF

## DESIGNATION OF TRIAL AND REQUEST FOR JURY TRIAL

COMES NOW, Plaintiff Deborah Holaday by and through her counsel of record and hereby requests a trial by jury and designates Topeka, Kansas as the location for trial of this matter.

BY:   /s/R. Kip Elliot
R. Kip Elliot #17663
Disability Rights Center of Kansas
214 S.W. 6TH Ave., Suite 100
Topeka, KS 66603
(785)273-9661
(785)273-9441 facsimile
kip@drckansas.org
ATTORNEY FOR PLAINTIFF